NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|                           |   |                                 |
|---------------------------|---|---------------------------------|
| SHAR-RIK MOLLEY,          | : |                                 |
|                           | : | Civil Action No. 13-3811(NLH)   |
| Plaintiff,                | : |                                 |
|                           | : |                                 |
| v.                        | : | **OPINION**                     |
|                           | : |                                 |
| CFG, et al.,              | : |                                 |
|                           | : |                                 |
| Defendants.               | : |                                 |
|                           | : |                                 |

**APPEARANCES:**

Shar-Rik Molley
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, NJ  08330
    Plaintiff pro se


**HILLMAN,** District Judge

    Plaintiff Shar-Rik Molley, a pre-trial detainee confined at

Atlantic County Justice Facility in Mays Landing, New Jersey,

seeks to bring this action in forma pauperis pursuant to 42

U.S.C. § 1983, alleging violations of his constitutional rights.[1]

---

[1] This Court previously entered its Opinion and Order [2, 3]
denying without prejudice Plaintiff's deficient application for
leave to proceed in forma pauperis and administratively
terminating this matter.  Plaintiff has since submitted a
complete Application [4] for leave to proceed in forma pauperis.
Based on his affidavit of indigence and the absence of three
qualifying dismissals within 28 U.S.C. § 1915(g), the Court will
grant Plaintiff's application to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the

1

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he arrived at Atlantic County Justice Facility ("ACJF") from the hospital where he had been provided a sling and crutches for a sprain.  He alleges that when he arrived at ACJF, Dr. Clemmons called him a "damn fool," and Dr. Cherly DeBoise took the sling and crutches from him and removed him from the medical facility to general population.

Plaintiff alleges that in general population he was not able to obtain ice for the swelling of his foot and that he was not able to elevate the foot as recommended.  He also states

Court to re-open this action and file the Complaint.

that he has remained in pain and that he needs to see a foot

doctor as the hospital suggested.

Plaintiff names as Defendants CFG, presumably a contracted

medical provider for ACJF, Dr. Clemmons, and Dr. DeBoise.[2]

Plaintiff seeks compensatory damages and further medical

treatment.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

Every complaint must comply with the pleading requirements

of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is

entitled to relief."  "Specific facts are not necessary; the

statement need only 'give the defendant fair notice of what the

... claim is and the grounds upon which it rests.'"  Erickson

v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do ... .  Factual allegations must be enough to
> raise a right to relief above the speculative level
> ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

---

[2] Plaintiff also adds "et al" to the caption of the Complaint.
In the text of the Complaint, he generally alleges that he has
been "treated badly" by other medical staff.  These vague
allegations are not sufficient to state a claim against any
other persons, as explained more fully, below.

(citations omitted). That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678 (citations omitted).

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true,

4

see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir.

2012), and to construe it liberally in favor of the plaintiff,

see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States

v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), cited

in Thomaston v. Meyer, 519 F.App'x 118, 120 n.2 (3d Cir. 2013);

Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

IV.   ANALYSIS

A.   The Claim Against Dr. DeBoise

Plaintiff alleges that Dr. DeBoise took from him crutches
and a sling provided by the hospital where he had been treated
before his incarceration, and that she removed him from the
medical facility and returned him to general population.  He
alleges that these actions interrupted his treatment and
subjected him to continuing pain and injury.

Criminal pretrial detainees retain liberty interests firmly
grounded in the Due Process Clause of the Fourteenth Amendment.
See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v.
Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether
such a detainee has been deprived of liberty without due process
is governed by the standards set out by the Supreme Court in
Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-
60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only
> the protection against deprivation of liberty without
> due process of law, we think that the proper inquiry
> is whether those conditions amount to punishment of
> the detainee. ...

6

> Not every disability imposed during pretrial detention
> amounts to punishment in the constitutional sense,
> however. …
>
> A court must decide whether the disability is imposed
> for the purpose of punishment or whether it is but an
> incident of some other legitimate governmental
> purpose. Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]. Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to punishment. Conversely, if a restriction or
> condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees. ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institutions interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540. Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives, 441 U.S.

at 539 n.20, nor are grossly exaggerated responses to genuine

security considerations.  Id. at 539 n.20, 561-62.

Moreover, the due process rights of a pretrial detainee, to medical care, are "at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244-45 (1983) (citing, inter alia, Bell v. Wolfish).  The Eighth Amendment proscription against cruel and unusual punishment is violated when prison officials are deliberately indifferent[3] to a prisoner's serious medical needs.[4]  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  "Where prison authorities deny reasonable requests for medical treatment, ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities

---

[3] "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).

[4] Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment.'"  Monmouth County Corr.
Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987),
cert. denied, 486 U.S. 1006 (1988) (citations omitted).  "Short
of absolute denial, if necessary medical treatment [i]s ...
delayed for non-medical reasons, a case of deliberate
indifference has been made out."  Id. (citations omitted).
"Deliberate indifference is also evident where prison officials
erect arbitrary and burdensome procedures that result[] in
interminable delays and outright denials of medical care to
suffering inmates."  Id. at 347 (citation omitted).

     A prisoner's subjective dissatisfaction with his medical
care, however, does not in itself indicate deliberate
indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228
(D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md.
1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, mere
disagreements over medical judgment do not state Eighth
Amendment claims.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).

     Beyond these parameters, the Court of Appeals for the Third
Circuit has not delineated the standard applicable to claims
that denial or inadequacy of medical care violates a detainee's
right to due process.  See, e.g., Carson v. Mulvihill, 488

9

F.App'x 554, 561 (3d Cir. 2012) ("We need not resolve today
which standard [Bell or Estelle] applies."); King v. County of
Gloucester, 302 F.App'x 92, 95 (3d Cir. 2008) ("In assessing the
denial of medical care to a pretrial detainee, … [the] inquiry
involves an indirect application of the Eighth Amendment
deliberate indifference standard.").

Here, Plaintiff's allegations that he had some kind of
sprain and that Dr. DeBoise took away crutches and a sling
provided to him at the hospital, while returning him to general
population where he could not "ice" or elevate his foot, and
while failing to provide any further treatment, subjecting him
to continuing pain and injury, are sufficient to survive
dismissal at this screening stage.  Cf. Hemmings v. Gorczyk, 134
F.3d 104 (2d Cir. 1998).

B.    The Claims Against Dr. Clemmons and Other Staff

The only allegation against Dr. Clemmons is that he called
Plaintiff a "fool."  This allegation of name-calling is plainly
insufficient to state a claim for unconstitutional denial of
medical care or violation of any other constitutional right.
See, e.g., Brown v. Hamilton Police Dept., Civil No. 13-0260,
2013 WL 3189040, *2 (D.N.J. June 21, 2013) (verbal harassment)
(collecting cases); Barber v. Jones, Civil No. 12-2578, 2013 WL
211251, *4-*6 (D.N.J. Jan. 18, 2013) (verbal harassment)
(collecting cases).  Accordingly, this claim will be dismissed

10

with prejudice.

In addition, Plaintiff makes a vague "et al," designation in the caption of the Complaint, failing to identify the individuals to whom that characterization is intended to apply, either by name or action.  The vague allegations regarding other individuals contained in the text of the Complaint -- for example, that Plaintiff has been treated unprofessionally by the entire staff -- are plainly insufficient to raise above the speculative level any claim that any particular person was deliberately indifferent to Plaintiff's serious medical needs or otherwise violated any constitutional right.  Accordingly, all claims against unnamed defendants will be dismissed without prejudice.

C.    The Claim Against CFG

It is well established that local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A

11

defendant in a civil rights action must have personal
involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of
personal direction or of actual knowledge and acquiescence."
Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)
(citations omitted).  Accord Robinson v. City of Pittsburgh, 120
F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d
1186, 1190-91 (3d Cir. 1995).

To establish liability of a municipality or government
agency under § 1983, "a plaintiff must show that an official who
has the power to make policy is responsible for either the
affirmative proclamation of a policy or acquiescence in a well-
settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d
Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57
F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995),
and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d
118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that,
through its deliberate conduct, the municipality was the moving
force behind the plaintiff's injury.  Monell, 436 U.S. at 689.

A policy is made "when a decisionmaker possess[ing] final
authority to establish municipal policy with respect to the
action issues a final proclamation, policy or edict."
Mulholland v. Government County of Berks, Pa., 706 F.3d 227, 237

12

(3d Cir. 2013) (citations and internal quotation marks omitted).

A custom is an act "that has not been formally approved by an

appropriate decisionmaker," but that is "so widespread as to

have the force of law."  Bd. of County Comm'rs of Bryan County,

Oklahoma v. Brown, 520 U.S. 397, 404 (1997).

> There are three situations where acts of a
> government employee may be deemed to be the result of
> a policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity
> liable under § 1983.  The first is where "the
> appropriate officer or entity promulgates a generally
> applicable statement of policy and the subsequent act
> complained of is simply an implementation of that
> policy."  The second occurs where "no rule has been
> announced as policy but federal law has been violated
> by an act of the policymaker itself."  Finally, a
> policy or custom may also exist where "the policymaker
> has failed to act affirmatively at all, [though] the
> need to take some action to control the agents of the
> government 'is so obvious, and the inadequacy of
> existing practice so likely to result in the violation
> of constitutional rights, that the policymaker can
> reasonably be said to have been deliberately
> indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).  The

same standard applies to claims against a private corporation

that is functioning as a "state actor."  See Weigher v. Prison

Health Services, 402 F.App'x 668, 669-70 (3d Cir. 2010).

Here, to the extent CFG could be considered a "state

actor," Plaintiff has alleged no facts suggesting that the

decisions to remove his crutches and sling and return him to the

general population were the result of an actionable policy or

practice on the part of CFG.  Accordingly, all claims against

CFG will be dismissed without prejudice for failure to state a claim.

### V.  CONCLUSION

For the reasons set forth above, the Fourteenth Amendment medical-care claim may proceed as against Dr. Deboise.  All remaining claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies described above, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[5]  An appropriate order follows.


At Camden, New Jersey                      s/Noel L. Hillman
                                    Noel L. Hillman
                                    United States District Judge

Dated:  June 24, 2014

---

[5] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  See West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases).  See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  Id.